**FARRELL LINES, INC., Plaintiff,**

v.

**INSURANCE COMPANY OF NORTH AMERICA, Defendant.**

**Civ. A. No. 82–4445.**

United States District Court,
E.D. Louisiana.

Jan. 11, 1985.

Michael H. Bagot, Jr., Richard N. Dicharry, New Orleans, La., for plaintiff.

Suzanne P. Keevers, New Orleans, La., for defendant.

CASSIBRY, Senior District Judge:

In this case plaintiff Farrell Lines, Inc., seeks to recover from the defendant Insurance Company of North America [INA] the amount it has paid for defense of a personal injury suit filed in 1975 and tried in 1980 in Section "H" of this court, *William Glas-*

*per v. Farrell Lines, Inc., et al.,* 638 F.2d 1233 (5th Cir.1981), the cost of prosecuting the present action, and interest and penalties under LSA–R.S. 22:658, contending that a defense was owed to it under one or more policies issued to it by the defendant.

The insurance claims of Farrell Lines made in this case were sought to be made in a third-party complaint in the Glasper suit in which a verdict was rendered in favor of Farrell Lines.

Judge Adrian G. Duplantier, Judge of Section "H" of this court denied Farrell Lines' motion to file the third-party complaint on the grounds of tardiness, inasmuch as the suit had been proceeding for four and one-half years. Farrell Lines then filed the present action. The case has been submitted on the record, stipulations of fact, joint exhibits and memoranda of the parties.

Glasper claimed inter alia in his complaint filed against Farrell Lines on March 10, 1975 that he was injured by a defective container owned and/or leased by that defendant which was in the process of being lifted up by a gantry for loading in the M/V AUSTRAL ENTENTE owned by Farrell Lines. Glasper, an employee of the stevedore, alleged that his injury was caused by his fall from a tractor he was operating as it was lifted off the ground because a latch which secured the container to the trailer malfunctioned. Defendant Insurance Company of North America [INA] denied any coverage of Farrell Lines which imposed on it a duty to defend that law suit. Farrell Lines' P & I insurer then defended the suit.

The P & I policy of Farrell Lines contained a $25,000.00 deductible provision. A total of $21,953.98 was expended in defense of that suit. Farrell Lines is attempting in this suit to collect that amount plus the costs of prosecuting this litigation, and interest and penalties under LSA–R.S. 22:658 from INA under two policies issued by INA to it. Having decided the coverage issue in favor of INA, the court now enters the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. Plaintiff Farrell Lines is a New York corporation with its principal offices in New York.

2. Defendant INA is a corporation formed according to the laws of a state other than New York with its principal offices in Pennsylvania.

3. The amount in controversy in this suit on insurance policies exceeds $10,-000.00.

4. Farrell Lines owned the M/V AUSTRAL ENTENTE on the date of William Glasper's accident and was in the business of transporting cargo.

5. Farrell Lines obtained stevedoring services from J. Young & Co., Inc., William Glasper's employer, to transfer containers from the France Road wharf to the M/V AUSTRAL ENTENTE in New Orleans, Louisiana.

6. In loading the M/V AUSTRAL ENTENTE, the stevedore used cargo containers which, among other equipment, was leased to Farrell by third parties.

7. Neither the France Road wharf nor the ways immediately adjoining it were owned, rented to or controlled by Farrell Lines.

8. William Glasper was injured during the loading of the M/V AUSTRAL ENTENTE as he assisted in the transfer of containerized cargo from the wharf to the vessel.

9. Farrell Lines was the insured in two INA policies in effect on the date of William Glasper's accident:

(1) Comprehensive General Liability policy No. 46 84 21;

(2) Multiple liability policy No. 22 95 03, including Comprehensive Automobile Liability.

10. INA policy CGL 46 84 21 contained a standard watercraft exclusion as follows:

EXCLUSIONS:

This insurance does not apply:

(e) to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of

(1) Any watercraft owned or operated by or rented or loaned to any insured, or

(2) Any other watercraft operated by any other person in the course of his employment by any insured,

but this exclusion does not apply to watercraft while ashore on premises owned by, rented to or controlled by the Named Insured: . . .

11. INA policy CGL 46 84 21 also contained the following special Exclusion Endorsement:

## EXCLUSION ENDORSEMENT

In consideration of the premium charged, it is agreed that such insurance as is afforded by the Policy to which this endorsement forms a part shall not apply;

(1) to the ownership, maintenance, existence, operations, use, loading or unloading of watercraft;

(2) to any occurrence or accident happening on board watercraft or any gangway forming a part of watercraft;

(3) to any occurrence or accident which is or would be covered in whole or in part under Protection and Indemnity policy of Marine Insurance whether or not such insurance is carried by the insured;

(4) to stevedoring and freight handling operation at any pier, dock or wharf performed by the insured unless the company is advised of such operation within thirty (30) days after completion.

12. A watercraft exclusion appears also in INA policy GAL 22 95 03 which schedules 1,000 containers in the Manufacturers and Contractors Liability Insurance portion of the policy. That exclusion reads:

This insurance does not apply:

.    .    .    .    .

(e) to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of

(1) any watercraft owned or operated by or rented or loaned to any insured, or

(2) any other watercraft operated by any person in the course of his employment by any insured;

but this exclusion does not apply to watercraft while ashore on premises owned by, rented to or controlled by the Named Insured.

13. Policy GAL 22 95 03 contains a clause insuring Farrell Lines against liability arising out of the "ownership, maintenance or use" of automobiles. In the policy's Schedule of Automobile Liability Hazards" it is stated that "Owned and Leased Running Gear, Mobile wheels, Bogies, Dollies and Similar Trailer Type Equipment" . . . "will be Principally Garaged" in "New York, N. Y."

14. Policy GAL 22 95 03 provides only excess insurance as to certain automobiles. Clause VI of the policy reads, "with respect to a leased automobile or a non-owned automobile, this insurance shall be excess insurance over any other valid and collectible insurance available to the Insured."

15. The automobile liability insurance portion of policy GAL 22 95 03 contains the following exclusion:

This insurance does not apply:

.    .    .    .    .

(b) to any obligation for which the insured or any carrier as his insurer may be held liable under any workmen's compensation or disability benefits law, or under any similar law.

16. On the date of William Glasper's accident Farrell Lines also had in effect for the M/V AUSTRAL ENTENTE a Protection and Indemnity (P & I) policy of insurance No. 2–3782 provided by the American Steamship Mutual Protection and Indemnity Association, Inc.

17. The P & I policy states:

The Association agrees to indemnify the Assured against all loss, damage or expense which the assured shall become liable to pay and shall pay by reason of the fact that the assured is the owner (or operator, manager, charterer, mortgag-

ee, trustee, receiver or agent as the case may be) of the insured vessel and which shall result from the following liabilities, risks, events, occurrence and expenditure . . .

(a) Liability hereunder in connection with the handling of cargo for the insured vessel shall commence from the time receipt by the assured of the cargo on dock or wharf, or on craft alongside for loading, and shall continue until due, delivery thereof from dock or wharf of discharge or until discharge from the insured vessel onto a craft alongside.

18. Clause 24 of the P & I policy provides:

The Association shall not be liable for any loss, damage or expense against which, but for the insurance herein provided, the Assured is or would be insured under existing insurance.

19. The P & I policy has a deductible of $25,000.00.

20. On March 10, 1975 William Glasper, a longshoreman employed by J. Young & Co., filed suit against Farrell Lines and others alleging that he was injured on March 10, 1974 while operating a tractor in conjunction with the loading of the AUSTRAL ENTENTE at the France Road Wharf in New Orleans.

21. Immediately before his accident, Glasper had driven the tractor with a trailer that was loaded with a container to the apron of the France Road Wharf so that the container could be loaded aboard the AUSTRAL ENTENTE by a shoreside gantry crane operated by a fellow longshoreman.

22. The container was secured to the trailer by four latches which were to be released by longshoremen prior to the container's being lifted by the crane.

23. Glasper alleged that when the crane began to pick up the container, the tractor and trailer were also lifted because of a design, manufacturing or maintenance defect in one of the container's latches which failed to disengage.

24. Glasper alleged that he was injured when he fell off of the tractor to the France Road Wharf.

25. The AUSTRAL ENTENTE was owned and operated by Farrell Lines.

26. The trailer and container were owned by third parties and leased to Farrell Lines.

27. Farrell Lines notified its insurance agent, Carroon & Black, of William Glasper's accident by letter dated March 17, 1975, initiating the inquiry whether its P & I insurer or public liability insurer should respond.

28. Carroon & Black notified INA of William Glasper's accident by letter dated March 19, 1975.

29. After an INA adjuster took two statements of witnesses to Glasper's accident, INA denied coverage under policy GLP 46 84 21 and so informed Farrell by letter dated August 7, 1975.

30. Farrell's manager of marine claims, F. E. Moles, then forwarded the Glasper suit to the law firm of Phelps, Dunbar, Marks, Claverie & Sims for defense.

31. The P & I insurer defended Farrell Lines.

32. On August 8, 1977 counsel for Farrell Lines wrote INA's supervisor of the New Orleans office, Mr. William E. Long, suggesting that the watercraft exclusion in policy GLP 46 84 21 did not apply and that INA should defend and indemnify Farrell Lines.

33. William Long responded on October 14, 1977, continuing to deny coverage based on the watercraft exclusion.

34. Counsel for Farrell Lines reiterated the request in eleven additional letters between October 26, 1977 and October 10, 1979, but INA remained firm in its refusal to undertake the defense of Farrell Lines in the Glasper case.

35. On November 6, 1979 counsel for Farrell Lines suggested for the first time that INA owed Farrell Lines a defense under policy GAL 22 95 03 and forwarded a copy of that policy to William Long.

36. Farrell Lines sought to file a third party complaint against INA in the Glasper suit in January 1980.

37. Due to the proximity of trial, Judge Adrian G. Duplantier disallowed the third-party complaint.

38. Trial of the Glasper case was held on March 10–12, 1980, resulting in a verdict in favor of Farrell Lines.

39. That verdict was affirmed by the Fifth Circuit Court of Appeals on February 17, 1981.

40. Phelps, Dunbar, Marks, Claverie & Sims billed Farrell Lines $20,700.00 in fees and $1,253.98 in expenses in the defense of the Glasper suit.

41. Farrell Lines paid $240.99 on July 7, 1979, $5,965.00 on July 17, 1979, $719.44 on October 15, 1980 and $15,029.35 on November 10, 1981 for the defense of the Glasper suit.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of this suit under 28 U.S.C. § 1332, and venue is proper in this District.

2. In this diversity case the Court must apply the law of the State of Louisiana. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 74, 58 S.Ct. 817, 820, 82 L.Ed. 1188 (1938).

3. A contract of insurance, like any other contract, is the law between the parties, and is enforced according to the true intent of the parties as shown by the wording of the policy. *Schmieder v. State Farm Fire & Cas. Co.*, 339 So.2d 390 (La. App. 1st Cir.1976), writs denied 341 So.2d 895 (La.1977); *Harmon v. Lumbermens Mut. Cas. Co.*, 247 La. 263, 170 So.2d 646 (1965); La.Civ.Code Arts. 1901, 1945, 1946.

4. Coverage for Glasper's accident is excluded in INA policy CGL 46 84 21 by the watercraft exclusion which excludes those risks arising out of Farrell Lines "ownership, maintenance, operation, use, loading or unloading" of a vessel. While the decision in *Grigsby v. Coastal Marine*, 412 F.2d 1011 (5th Cir.1969), relied on by Farrell Lines, stands for the proposition that the standard watercraft exclusion does not apply in instances where an insured's involvement with the watercraft is peripheral, it does apply when the activity giving rise to the risk is closely connected to the activities of the watercraft owner.

In this case the loading of Farrell's vessel the AUSTRAL ENTENTE was Farrell's work being done when Glasper was injured, regardless of the fact that Farrell had hired a stevedore to load its vessel. Farrell Lines' lending of its leased equipment to its stevedore to load its vessel was closely related to its activities as vessel owner of transporting cargo for profit.

5. The intention in policy CGL 46 84 21 was to exclude those risks normally undertaken by a marine underwriter. Risks associated with cargo handling and the loading and unloading of vessels are normally covered by protection and indemnity policies of marine insurance. Broad coverage for those risks is extended to Farrell Lines in its P & I policy, although the exclusion in policy CGL 46 84 21 does not require as a condition that there be a P & I policy, only that the occurrence or accident involved be of a type which "is or would be covered" by maritime P & I policies.

6. INA's contention that it was not given sufficient notice of a claim under INA policy GAL 22 95 03 is not sustained. Carroon & Black's notification of INA of the Glasper suit on March 19, 1975 was sufficient notice of a claim under any INA policy which may have been in effect and applicable to the loss.

7. Although INA policy GAL 22 95 03 schedules 1,000 containers in the "Manufacturers and Contractors Liability Insurance" portion of the policy, the watercraft exclusion in that portion is effective to exclude liability for this loss for the reasons stated hereinabove in connection with the watercraft exclusion in INA policy CGL 46 84 21.

8. The trailer and container alleged to be defective in the Glasper suit is not an automobile within the contemplation of the Automobile Liability Insurance portion of

INA policy GAL 22 95 03. The policy produced by Farrell Lines lacks a definition of automobile, and INA was unable to find a copy of the policy after Farrell Lines produced it.

In common parlance a trailer and container attached to a small tractor is not an automobile. Farrell Lines does not contend otherwise, but argues that the statement in the "Schedule of Automobile Liability Hazards" that "Owned and Leased Running Gear, Mobile Wheels, Bogies, Dollies and Similar Trailer Type Equipment" ... "Will Be Principally Garaged" in "New York, N. Y." indicates an intent that the tractor and trailer allegedly involved in Glasper's accident would fall within the automobile liability insurance. This statement cannot reasonably be so construed. Trailer type equipment when attached to an automobile would become a part of the automobile. A mere listing of trailer-type equipment in this Automobile Liability Insurance portion of the policy does not show any intent that such equipment is considered of itself to be an automobile.

9. If my conclusion that the trailer and container are not an automobile were otherwise, they would nevertheless not be an automobile covered by this policy. The trailer-type equipment enumerated is equipment which "Will Be Principally Garaged" in "New York, N. Y." In its submission of the case Farrell Lines has offered no facts to show that the equipment in New Orleans was ever garaged in New York. It argues simply that "because the policy does not state that it is voided or coverage precluded if an accident occurs outside of New York, N. Y., the policy applies to accidents in the port of New Orleans." I would agree that, if the equipment were principally garaged in New York, the policy would apply to the equipment even in accidents involving it in the port of New Orleans.

10. Part (b) of the exclusions in policy GAL 22 95 03 does not serve as an additional ground to exclude coverage under that policy. INA's argument is not valid that, because an injured longshoreman's tort action against a third-party is preserved by Section 5(b) of the Longshoremen's Compensation Act, LHWCA as amended in 1972, the exclusion of "any obligation for which the insured or any carrier as its insurer may be held liable under any workmen's compensation or disability benefits law or under any similar law" excludes liability under the policy. That portion of the Act preserving third-party tort liability actions to longshoremen is not similar to employment-related benefit laws such as workmen's compensation and disability benefits laws.

The Clerk shall enter judgment dismissing plaintiff's complaint.