**FARRELL LINES, INC.,**
**Plaintiff-Appellant,**

v.

**INSURANCE COMPANY OF NORTH AMERICA, Defendant-Appellee.**

No. 85–3114.

United States Court of Appeals,
Fifth Circuit.

May 9, 1986.

Michael H. Bagot, Jr., Richard N. Dicharry, New Orleans, La., for plaintiff-appellant.

Suzanne P. Keevers, Michael E. Holoway, New Orleans, La., for defendant-appellee.

Before GARZA and JOHNSON, Circuit Judges.*

JOHNSON, Circuit Judge:

In this Louisiana diversity case, the plaintiff Farrell Lines, Inc. ("Farrell Lines"), a New York corporation with its principal place of business in that state, seeks to recover from its general liability insurer, Insurance Company of North America ("INA"), the amount Farrell Lines paid for defense of a personal injury suit, as well as the cost of prosecution of the present action and penalties. Farrell Lines contends that INA owed Farrell Lines a defense of the personal injury suit under one or more policies issued to Farrell Lines by INA. The district court held that INA owed no such defense under the insurance policies, *Farrell Lines, Inc. v. Insurance Company of North America*, 600 F.Supp. 740 (E.D.La.1985), and Farrell Lines appeals to this Court. The district court relied on, inter alia, the watercraft exclusion contained in two of the coverages and the exclusion for risks normally covered by protection and indemnity ("P & I") insurance. The district court also held that Farrell Lines' automobile coverage with INA did not apply to the risk in question. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

On March 10, 1974, William T. Glasper suffered an injury while working at the France Road Wharf in New Orleans, Louisiana. At the time of the injury, Glasper, a longshoreman, was employed by a stevedoring contractor, J. Young & Co. Immediately before his injury, longshoreman Glasper had driven a tractor-trailer carrying a shipping container. The container was to be loaded aboard Farrell Lines' vessel, M/V AUSTRAL ENTENTE, by a shoreside gantry crane operated by a fellow longshoreman. The cargo container was secured to the trailer by four latches which were to be released by longshoreman Glasper's co-workers prior to the container's being lifted by the crane. When the

---

* Due to his death on March 27, 1986, Judge Albert Tate, Jr., did not participate in this decision. The case is being decided by a quorum. 28 U.S.C. 46(d).

crane operator lifted the container, however, the trailer remained attached to the container. This caused the tractor also to rise from the ground, throwing longshoreman Glasper to the ground and seriously injuring him. The trailer and container were owned by third parties and leased to Farrell Lines. In his lawsuit seeking recovery for his injuries, Glasper alleged that the container failed to disengage from the tractor because of a design, manufacturing, or maintenance defect in the trailer or one of the container's latches. Glasper asserted that Farrell Lines was liable because it was the lessee of the allegedly defective cargo container and/or trailer.

After Glasper filed suit, Farrell Lines advised its general comprehensive liability insurer, INA, of the claim and requested that INA undertake Farrell Lines' defense. Farrell Lines was, at the time of Glasper's accident, insured under two separate INA policies:

(1) Comprehensive General Liability Policy No. 46 84 21 ("Comprehensive Liability Policy"); and

(2) Multiple Liability Policy No. 22 95 03, including Comprehensive Automobile Liability ("Multiple Liability Policy").

After an INA adjuster took statements from witnesses to Glasper's accident, INA declined coverage, pointing to the "watercraft exclusion" contained in the Comprehensive Liability Policy (policy CGL 46 84 21).[1] The Comprehensive Liability Policy also contained an exclusion for risks covered by a P & I policy of marine insurance.[2] Following INA's denial of coverage in 1975, Farrell Lines' P & I association, American Steamship Owners Mutual Protection and Indemnity Association, Inc. ("American Steamship"), provided a defense to Glasper's personal injury suit against Farrell Lines.[3]

Despite American Steamship's action, Farrell Lines persisted in its position that INA owed Farrell Lines a defense, perhaps because the P & I policy carried a deductible of $25,000.00. In 1977, Farrell Lines wrote INA officers that the watercraft exclusion in the Comprehensive Liability Policy did not apply and that INA should defend Farrell Lines. INA, however, remained adamant that it owed Farrell Lines no such duty.

In early November 1979, Farrell Lines suggested for the first time that INA owed Farrell Lines a defense under the second policy, that is, the Multiple Liability Policy (GAL Policy 22 95 03). The Multiple Liability Policy contained coverages for both Manufacturers and Contractors Liability Insurance ("M & C" coverage) and liability

1. The watercraft exclusion provides:

This insurance does not apply:

. . . . .

(e) to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of

(1) Any watercraft owned or operated by or rented or loaned to any insured, or

(2) Any other watercraft operated by any other person in the course of his employment by any insured....

2. The relevant provision of the Comprehensive Liability Policy's special exclusion endorsement reads:

EXCLUSION ENDORSEMENT

In consideration of the premium charged, it is agreed that such insurance as is afforded by the Policy to which this endorsement forms a part shall not apply:

. . . . .

(3) To any occurrence or accident which is or would be covered in whole or in part under

Protection and Indemnity Policy(ies) of Marine Insurance whether or not such insurance is carried by the insured.

3. The P & I coverage afforded by American Steamship included:

The Association agrees to indemnify the Assured against all loss, damage or expense which the assured shall become liable to pay and shall pay by reason of the fact that the assured is the owner (or operator, manager, charterer, mortgagee, trustee, receiver or agent as the case may be) of the insured vessel and which shall result from the following liabilities, risks, events, occurrence and expenditures ...

(c) Liability hereunder in connection with the handling of cargo for the insured vessel shall commence from the time of receipt by the Assured of the cargo on dock or wharf, or on craft alongside for loading, and shall continue until due delivery thereof from dock or wharf of discharge or until discharge from the insured vessel on to a craft alongside.

arising out of the ownership, maintenance, or use of automobiles. In its schedule of hazards for the premises covered by the M & C portion of the Multiple Liability Policy, the policy listed 1,000 containers. The M & C portion also contained a watercraft exclusion like the Comprehensive Liability Policy.[4] The automobile portion of the Multiple Liability Policy stated that coverage extended to "Owned & Leased Running Gear[,] Mobile wheels, Bogies, Dollies & Similar Trailer Type Equipment." The policy also stated that the city in which the covered automobiles were to be principally garaged was "New York, N.Y." As to leased automobiles, however, the policy provided only excess insurance.[5] INA refused to recognize any obligation under either the M & C or automobile portions of the Multiple Liability Policy. In January 1980, Farrell Lines sought to file a third-party complaint against INA in the Glasper suit, but the federal district court trying the Glasper suit disallowed the complaint due to the proximity of trial.

Trial of longshoreman Glasper's suit for personal injury was held on March 10–12, 1980. At trial, Farrell Lines introduced evidence to the effect that the locks holding the cargo container to Glasper's tractor-trailer were not defective but instead that Glasper's fellow employees forgot to disengage the locks. The trial resulted in a jury verdict in favor of Farrell Lines. The judgment was affirmed by this Court. *Glasper v. Farrell Lines, Inc.,* 638 F.2d 1233 (5th Cir. Feb. 17, 1981) (per curiam) (unpublished). Farrell Lines alleges that it paid its attorneys approximately $22,000 for the defense of the Glasper suit.[6]

On October 7, 1982, Farrell Lines filed the instant suit against INA to collect its expenses in defending the Glasper suit, as well as penalties. Farrell Lines contended that INA was liable for such fees under the Comprehensive Liability Policy or the Multiple Liability Policy, or both. The instant suit was submitted to the district court on stipulations of the parties and briefs.

The district court found that there was no coverage (1) under the M & C liability portion of the Multiple Liability Policy because of the standard watercraft exclusion, (2) under the Comprehensive Liability Policy because of the standard watercraft exclusion and because of the P & I policy exclusion contained in the special endorsement to the policy, and (3) under the automobile liability portion of the Multiple Liability Policy because the trailer and container attached to the tractor were not an automobile and because, even if they were, Farrell Lines failed to show that the equipment in question was ever garaged in New York. Having so decided the coverage issues, the district court entered judgment in favor of INA.

## II. FARRELL LINES' INSURANCE COVERAGE

On appeal, Farrell Lines asserts that (1) the P & I exception contained in the Comprehensive Liability Policy does not apply; (2) the watercraft exclusion does not bar Farrell Lines' claim under the Comprehensive Liability Policy or the M & C portion of the Multiple Liability Policy; and (3) the district court erred in holding that the automobile portion of the Multiple Liability Policy does not apply. In interpreting the insurance policies as to whether INA owed

---

4. The exclusion read:
   This insurance does not apply:

   . . . . .

   (e) to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of
   (1) any watercraft owned or. operated by or rented or loaned to any Insured, or
   (2) any other watercraft operated by any person in the course of his employment by an Insured.

5. Clause VI of the automobile portion reads:
   Excess Insurance—Hired and Non-Owned Automobiles
      With respect to a hired automobile or a non-owned automobile, this insurance shall be excess insurance over any other valid and collectible insurance available to the Insured.

6. The P & I policy contains a $25,000 deductible provision applicable to all expenses, including attorney fees.

Farrell Lines a defense, the Court is mindful that,

> "An insurer's duty to defend an action against the insured is measured, in the first instance, by the allegations in the plaintiff's pleadings, and if such pleadings state facts bringing the injury within the coverage of the policy, the insurer must defend, irrespective of the insured's ultimate liability to the plaintiff."

*Battisti v. Continental Casualty Co.,* 406 F.2d 1318, 1321 (5th Cir.1969) (emphasis deleted) (quoting 7A Appleman, *Insurance Law and Practice* § 4683 at 436 (2d ed. 1962)). Thus, in determining whether INA owed Farrell Lines a defense, the allegations by Glasper in the underlying suit are relevant.

### A. *The P & I Exclusion in the Comprehensive Liability Policy*

■ The district court held that coverage under the Comprehensive Liability Policy was precluded by the P & I exclusion, which stated that the policy did not cover "any occurrence or accident which is or would be covered in whole or in part under Protection and Indemnity policy of Marine Insurance...."[7] Farrell Lines again asserts error, contending that the district court incorrectly decided that Farrell Lines' potential liability to Glasper "is or would be covered" by maritime P & I policies. Farrell Lines points out that its P & I policy with American Steamship covered Farrell Lines only in its capacity as "vessel owner." Farrell Lines then argues that, under Glasper's theory of the case, it was liable only as lessee of the allegedly defective container, and not as owner of the vessel. Farrell Lines concludes that its P & I policy with its other insurer, American Steamship, therefore does not apply to the risk in question and, consequently, that the P & I exclusion in the Comprehensive Liability Policy cannot rescue INA from liability under such policy.

Farrell Lines' contention must be rejected. Farrell Lines relies on two cases decided by this Court. *Lanasse v. Travelers Insurance Co.,* 450 F.2d 580 (5th Cir.1971), *cert. denied,* 406 U.S. 921, 92 S.Ct. 1779, 32 L.Ed.2d 120 (1972). *Wedlock v. Gulf Mississippi Marine Corp.,* 554 F.2d 240 (5th Cir.1977). *Lanasse* and *Wedlock,* however, did not deal with the vessel owner's liability arising out of loading and unloading operations. In the instant case, Farrell Lines' P & I policy, with its P & I insurer, American Steamship, covered such risks:

> The Association agrees to indemnify the Assured against any loss, damage or expense which the assured shall become liable to pay and shall pay by reason of the fact that the assured is the owner (or operator, manager, charterer, mortgagee, trustee, receiver or agent, as the case may be) of the insured vessel and which shall result from the following liabilities, risks, events, occurrences and expenditure ...
>
> (c) Liability hereunder in *connection with the handling of cargo for the insured vessel shall commence from the time of receipt by the assured of the cargo on dock or wharf, or on craft alongside for loading,* and shall continue until due delivery thereof from dock or wharf of discharge or until discharge from the insured vessel on to a craft alongside.

Record Vol. I at 227–28 (emphasis added). Where such loading and unloading operations are involved, this Court has found the P & I policy applicable. *See Helaire v. Mobil Oil Co.,* 709 F.2d 1031, 1041–42 (5th Cir.1983). Thus, it cannot be accepted that the risk arising from longshoreman Glasper's injury would lie outside the coverage afforded by P & I policy. Therefore, this Court concludes that the district court correctly held that coverage under the Comprehensive Liability Policy with INA was precluded by the P & I exclusion contained therein.

---

**7.** While the watercraft exclusion applied to two of Farrell Lines' coverages (i.e., the Comprehensive Liability Policy and the M & C portion of the Multiple Liability Policy), the district court found the P & I exclusion only in the Comprehensive Liability Policy.

## B. *The Watercraft Exclusion*

█ The district court held that Farrell Lines was precluded from recovery under the M & C portion of the Multiple Liability Policy by the watercraft exclusion contained therein.[8] The district court reasoned that such an exclusion applies "when the activity giving rise to the risk is closely connected to the activities of the watercraft owner." 600 F.Supp. at 745. Since the loading of Farrell Lines' vessel, the M/V AUSTRAL ENTENTE, was the work being performed at the time of Glasper's injury, the district court concluded that the risk was closely related to Farrell Lines' activities as a vessel owner.

On appeal, Farrell Lines contends that the district court erred in applying the watercraft exclusion. Farrell Lines urges that, since it leased the container with the allegedly defective latches, Glasper's suit attempted to subject Farrell Lines to liability on a basis other than Farrell Lines' ownership of the vessel that was being loaded. The existence of this additional source of liability, Farrell Lines asserts, prevents INA from successfully asserting the watercraft exclusion. That Farrell Lines may have also been held liable to Glasper as owner of the M/V AUSTRAL ENTENTE does not, it argues, render the watercraft exclusion applicable since such ownership was not the sole source of Farrell Lines' alleged liability. Farrell Lines relies principally on this Court's decision in *Terra Resources, Inc. v. Lake Charles Dredging & Towing Inc.*, 695 F.2d 828 (5th Cir.1983).

In *Terra Resources*, three barges owned by a parent (Parker Brothers Co.) and its subsidiary (Lake Charles Dredging & Towing), were moored to an anchoring device owned by Lake Charles Dredging. During a storm, the barges scudded through the water and collided with an oil production facility and pipeline. The owner of the production facility filed suit against the

parent and its subsidiary. The parent and subsidiary advised Aetna Casualty & Surety, their general comprehensive liability insurer, of the claim. Aetna denied liability, citing a watercraft exclusion. This Court affirmed the trial court's conclusion that the watercraft exclusion did not apply:

> We first reach Aetna's contention that the watercraft exclusion bars any claim by Lake Charles Dredging against it. If the sole source of Lake Charles Dredging's liability were its ownership and use of the barges, we would wholeheartedly support [Aetna's] position. In Louisiana, however, if an assured's liability arises from two sources, an exclusion pertaining to one source does not preclude coverage based on the other.... We agree with the trial court that Lake Charles Dredging's ownership of the mooring device was such a separate and independent source of potential liability, not encompassed by the watercraft exclusion.

695 F.2d at 831 (footnote and citations omitted). The Court concluded:

> To be sure, Parker Brothers and Lake Charles Dredging did not own the runaway barges, but this need not have been the case. The ownership of the mooring device was completely independent of Parker Brothers' and Lake Charles Dredging's ownership and use of the barges.... The failure of that device was a totally independent basis for Lake Charles Dredging's liability to [the plaintiffs]. Under Louisiana law, Aetna is accountable to Lake Charles Dredging under its insurance contract.

*Id.*

Guided by *Terra Resources*, this Court agrees with Farrell Lines' contention that its position as lessee of the allegedly defective container, like Lake Charles' ownership of the mooring device, was "a separate and independent source of potential liability, not encompassed by the watercraft exclusion." *Id.* at 831. While the district

---

**8.** The Comprehensive Liability Policy also contained a watercraft exclusion. Since we have already affirmed the district court's holding that the Comprehensive Liability Policy afforded Farrell Lines no recovery because of the P & I exclusion, we need not address the effect of the watercraft exclusion on that same policy.

court's conclusion would have been a permissible one if Farrell Lines had no source of liability other than that resulting from its ownership of the vessel, *see Grigsby v. Coastal Marine Service of Texas, Inc.*, 412 F.2d 1011, 1038 (5th Cir.1969), *cert. denied*, 396 U.S. 1033, 90 S.Ct. 612, 24 L.Ed.2d 531 (1970), Louisiana law provides that, when an insured's liability arises from two sources, an exclusion pertaining to one source does not preclude coverage based on the other. *Terra Resources*, 695 F.2d at 831. Nor are defendant INA's attempts to distinguish *Terra Resources* persuasive. Thus, as did this Court in *Terra Resources*, the Court holds that the watercraft exclusion does not prevent INA from being accountable to Farrell Lines under the M & C portion of the Multiple Liability Policy.

## C. *Automobile Liability Insurance*

■ INA's Multiple Liability Policy also insures Farrell Lines against liability arising out of its leased automobiles and related equipment. The district court rejected Farrell Lines' contention that the automobile policy extended coverage for risks arising out of longshoreman Glasper's accident. The district court held first that the trailer and container leased by Farrell Lines which were attached to the tractor driven by Glasper were not an "automobile" covered by the policy. Secondly, the district court also noted that the policy provided that the equipment covered by the policy "Will be Principally Garaged" in "New York, N.Y." 600 F.Supp. at 746. Since no evidence was presented showing that the trailer was garaged in New York, New York, the district court held that this provision also prevented Farrell Lines' recovery under the automobile portion of the Multiple Liability Policy.

As the district court noted, "A contract of insurance ... is the law between the parties, and is enforced according to the true intent of the parties as shown by the wording of the policy." 600 F.Supp. at 745. In construing contracts of insurance, Louisiana courts stress that "it is the duty of the insurer to clearly express liability ex-

clusions and limitations, exclusionary clauses are strictly construed, and the insurer has the burden of proving the applicability of a coverage exclusion." *Hampton v. Lincoln National Life Insurance Co.*, 445 So.2d 110, 113 (La.App.1984). Moreover, "'[i]f the words or terms used in insurance policies are subject to more than one accepted meaning, then such words must be construed in the sense which is more favorable to the insured, unless such interpretation would lead to absurd results.'" *Carney v. American Fire & Indemnity Co.*, 371 So.2d 815, 818 (La.1979) (quoting *Hendricks v. American Employers Insurance Co.*, 176 So.2d 827, 830 (La.App.), *writ ref'd*, 248 La. 415, 179 So.2d 15 (La.1965)).

With these guiding principles in mind, we turn to the question of whether the automobile portion of the Multiple Liability Policy provided coverage. First, it is noted that the policy's "Schedule of Automobile Liability Hazards" extends to "Owned and Leased Running Gear, Mobile wheels, Bogies, Dollies and Similar Trailer Type Equipment." Moreover, a separate premium was charged for covering trailer-type equipment. Longshoreman Glasper alleged that his accident occurred as a result of a defective latch on the trailer and container leased by Farrell Lines. Thus, it must be held that the policy extended coverage to an accident such as that alleged by longshoreman Glasper and that the district court erred in holding that the trailer and container were not an "automobile" within the terms of this particular policy. *See Lovelace v. Gowan*, 52 So.2d 97, 103 (La.App.1951).

■ Further, it must also be held that the district court erred in placing the burden on the insured (Farrell Lines) to show the truth of the statement that the trailer was "principally garaged" in New York. Confronted with similar statements in other insurance policies, courts generally have treated such statements in policies as warranties or as policy exclusions. *See Arbuckle v. (American) Lumbermens Mutual Casualty Co. of Illinois*, 129 F.2d 791 (2d Cir.1942) (L. Hand, A. Hand, Chase,

JJ.). *See generally* R. Anderson & M. Rhodes, *Couch Cyclopedia of Insurance Law* § 37A:338 (2d ed. rev. 1982). The insurer bears the burden of showing the breach of a warranty or the applicability of an exclusion. *See Rodriguez v. Northwestern National Insurance Co.*, 358 So.2d 1237, 1241 (La.1978) (warranty); *Hampton*, 445 So.2d at 113 (exclusion). Thus, whether the provision is construed as a representation, warranty, or an exclusion, INA bore the burden of proving that Farrell Lines had not complied with it. Accordingly, it must also be held that the district court erred in placing the burden on Farrell Lines to show that the trailer was principally garaged in New York. Whether INA can carry this burden and whether Farrell Lines can recover under the policy if INA carries its burden are questions reserved for the trial court on remand.[9]

### III. CONCLUSION

Accordingly, the portion of the district court's judgment holding that Farrell Lines should not recover under the Comprehensive Liability Policy is AFFIRMED. The portion of the district court's judgment holding that Farrell Lines cannot recover under the Multiple Liability Policy is REVERSED. The case is REMANDED for further proceedings not inconsistent with this opinion.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

---

9. It is also noted that a provision in the automobile portion of the Multiple Liability Policy stated that the policy afforded only excess coverage for leased automobiles. Because of its disposition of the instant case, the district court did not reach the application of this provision. The question should also be addressed by the trial court in the first instance on remand. Finally, the appropriateness of any penalties due Farrell Lines from INA under Louisiana law is reserved for the trial court on remand.