580 So.2d 1073 (1991)
Bennie RANSOM
v.
CAMCRAFT, INC., et al.
Regina JEFFERSON, et al.,
v.
CAMCRAFT, INC., et al.
Leroy HENDERSON
v.
CAMCRAFT, INC., et al.
Nos. 90-CA-1813, 90-CA-1814 and 90-CA-1815.
Court of Appeal of Louisiana, Fourth Circuit.
May 30, 1991.
*1074 Scott W. McQuaig, Kim K. McElwee, Holoway, McQuaig, Solomon & Dyer, Metairie, for appellant.
Robert M. Murphy, Thomas Keasler Foutz, Gauthier & Murphy, Metairie, for appellee.
Before KLEES, CIACCIO and PLOTKIN, JJ.
CIACCIO, Judge.
Defendant, Continental Insurance Company (Continental) appeals a trial court judgment rendered in favor of plaintiffs, finding that a general comprehensive liability insurance policy issued by Continental to defendant-insured, Camcraft, Inc., (Camcraft) provided coverage for plaintiffs' claims for damages. We reverse.
The uncontested facts in this case are as follows:
1. On November 2, 1978, Bennie Ransom, Leroy Henderson, and Floyd Jefferson, Sr. allegedly sustained injuries while painting in the water cargo compartment of the vessel SOUTHERN CRESCENT. Shortly thereafter, Jefferson died from the resulting injuries.
2. On November 2, 1978, A-I Industries, Inc. (A-I Industries) was under contract with Camcraft to build the vessel Southern Crescent.
3. On November 2, 1978, the vessel SOUTHERN CRESCENT was owned by Camcraft.
4. On November 2, 1978, the SOUTHERN CRESCENT was an incomplete vessel under construction and afloat adjacent to the A-I Industries facility in Harvey, Louisiana.
5. On November 2, 1978, the vessel SOUTHERN CRESCENT was a watercraft.
6. Plaintiffs, Bennie Ransom, Leroy Henderson, and Regina Jefferson (wife of Floyd Jefferson, Sr., deceased), filed suit against Camcraft.
7. Plaintiffs have alleged that the negligence of Camcraft caused injury to Bennie *1075 Ransom and Leroy Henderson and caused Floyd Jefferson, Sr.'s death.
8. The specific allegations of negligence against Camcraft are as follows:
a. Failing to design a vessel which could be safely constructed;
b. Failing to provide adequate ventilation for the water cargo compartments which were required to be painted;
c. Failing to warn the builder and workers on the vessel of the need to ventilate the cargo compartment to prevent dangers of explosions and fires;
d. Specifying extremely hazardous and dangerous materials to be used in the coatings of the walls of the water cargo compartments;
e. Failing to warn the builders and workers on the vessel of the extreme dangers involved in the painting of the interior of the water cargo compartments;
f. Failing to adequately supervise the construction of the vessel, SOUTHERN CRESCENT;
g. Failing to insure that the construction of the vessel, SOUTHERN CRESCENT, was carried out in a safe manner.
9. Prior to the accident, Continental had issued a comprehensive general liability insurance policy, number L3390266, which provided coverage to Camcraft pursuant to the terms and provisions of that policy. This policy was in full force and effect on November 2, 1978.
10. Plaintiffs have alleged that Continental's policy of insurance provided coverage for the specific allegations of negligence outlined above.
On June 24, 1987, Continental filed a Motion for Summary Judgment, arguing the insurance policy issued to Camcraft did not provide coverage for plaintiffs' claims due to a "watercraft exclusion" contained in the policy. The specific exclusionary clause included in the policy reads as follows:
This insurance does not apply:
(e) To bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of
(1) any watercraft owned or operated by or rented or loaned to any insured, or
(2) Any other watercraft operated by any person in the course of his employment by any insured;
but this exclusion does not apply to watercraft while ashore on premises owned by, rented to or controlled by the named insured.
The trial judge denied Continental's motion and its motion for reconsideration.
The parties then tried the issue of coverage before the trial judge on May 10, 1990. The trial judge rendered judgment in favor of plaintiffs but gave no written reasons for judgment. Continental appealed.
On appeal, Continental assigns as error the trial court's finding that Camcraft's general comprehensive liability insurance policy issued by Continental provided coverage for plaintiffs' claims for damages sustained on the vessel in spite of the policy's specific watercraft exclusion. Plaintiffs contend, however, that the trial court did not err as Continental is precluded from applying the watercraft exclusion because plaintiffs have alleged Camcraft is liable on a basis other than its "ownership, maintenance, operation, use, loading or unloading of the vessel." Specifically, plaintiffs argue that Camcraft is liable for its negligence in the supervision of the construction of the SOUTHERN CRESCENT.
In support of their arguments, both plaintiffs and Continental rely on the case of Farrell Lines, Inc. v. Insurance Company of North America, 789 F.2d 300 (5th Cir.1986). In Farrell Lines, the court applied the watercraft exclusion of a comprehensive general liability insurance policy where plaintiff, Farrell Lines, sought to recover from its insurer the amount it had paid for the defense of a personal injury suit brought against it by a longshoreman injured in the course of loading cargo containers on Farrell Lines' vessel. The insurance company asserted that coverage for the longshoreman's accident was excluded by the watercraft exclusion. The district court reasoned that the watercraft exclusion *1076 applied "when the activity giving rise to the risk is closely connected to activities of the watercraft owner." Farrell Lines v. Insurance Company of North America, 600 F.Supp. 740 (E.D.La.1985). On appeal, the U.S. Fifth Circuit Court found that the district court's conclusion "would have been a permissible one if Farrell Lines had no source of liability other than that resulting from its ownership of the vessel", but Louisiana Law provides that when an insured's liability arises from two sources, an exclusion pertaining to one source does not preclude coverage based on the other, citing Terra Resources, Inc. v. Lake Charles Dredging & Towing, Inc., 695 F.2d 828 (5th Cir.1983). Thus, the Court held that the watercraft exclusion did not prevent the insurer from being accountable to Farrell Lines under the manufacturers and contractors portion of a Multiple Liability Policy issued to Farrell Lines.
In the instant case, the express wording of the watercraft exclusion contained in the insurance policy issued to Camcraft clearly bars coverage for any claims plaintiffs may have for bodily injury or property damage arising out of Camcraft's ownership, maintenance, operation, use, loading or unloading of the vessel. We must determine then whether, under the facts and circumstances of this case, Camcraft had a duty to supervise the construction of the SOUTHERN CRESCENT as alleged in plaintiffs' petitions, thereby creating a separate and independent source of potential liability, not encompassed by the watercraft exclusion.
The initial agreement entered into by Camcraft and A-I Industries on February 2, 1978 was an agreement to purchase. It provides that Camcraft as "builder" had contracted with A-I Industries as "sub contractor" to build a steel supply vessel. The agreement further provides that "[t]he vessel described in this contract is to be built for sale by the BUILDER to a party or parties (hereinafter referred to as "PURCHASER")." The agreement also states:
BUILDER shall be the owner of the VESSEL to be constructed pursuant to this contract and title to the work shall vest in BUILDER as and when performed. The work shall be deemed to have been delivered to, and title to the work shall be vested in BUILDER as and when performed and title to the VESSEL shall be vested in the BUILDER upon completion thereof.
Regarding the actual construction of the Southern Crescent, the agreement provides that the "[s]ubcontractor along with Kramer & Best, Inc.Naval Architectswill be responsible for proper design and construction of the Hull and for the selection of proper materials." An indemnity provision contained in the agreement states:
SUB-CONTRACTOR agrees to indemnify and hold harmless the BUILDER of and from all claims for damages arising from injuries to any person or persons, including SUB-CONTRACTOR'S employees, and to property of others occurring in, about or connected with the building, or launching of said VESSEL and prior to delivery of said VESSEL and acceptance thereof by BUILDER.
Further, Section V of the agreement provided for a right of inspection by the owner's representative. It reads as follows:
BUILDER or PURCHASER when accompanied by BUILDER'S representative(s) shall have the right to inspect the supply boat at any reasonable time during working hours.
At trial, plaintiffs had the burden of proving the allegations set forth in their petitions. Specifically, plaintiffs had to prove that defendant Camcraft had a duty to supervise the construction of the Southern Crescent, establishing a basis of potential liability on the part of Camcraft, a basis not derived from Camcraft's capacity as owner of the vessel.
The evidence presented at trial included the contract between Camcraft and A-I Industries and the insurance policy issued by Continental to Camcraft. Nowhere in the express language of the contract between Camcraft and A-I Industries is there a provision which imposes a duty on Camcraft, as the builder, to supervise the construction of the vessel. To the contrary, the contract expressly states that A-I Industries and the naval architects were responsible *1077 for the design and construction of the vessel and for the selection of the materials.
Law and jurisprudence provide that courts are bound to give legal effect to contracts according to the true intent of the parties to the contract, and that intent must be determined by the words of the contract when these are clear, explicit and lead to no absurd consequences. Massachusetts Mutual Life Insurance Company v. Nails, 549 So.2d 826 (La.1989); LSA-C.C. art. 2046. Moreover, the rule of strict construction does not authorize perversion of language or the creation of ambiguity where none exists, and does not authorize courts to make a new contract where the language employed expresses the true intent of the parties. J.M. Brown Construction Company v. D & M Mechanical Contractors, Inc., 222 So.2d 93 (La.App. 1st Cir.1969).
We find that under the contract between Camcraft and A-I Industries, the intent of the parties was to exclude claims such as plaintiffs'. This is evident by the clear language of the indemnity and hold harmless provision. Furthermore, we find that Camcraft's right, as builder, to inspect the vessel during working hours as set forth in Section V of the contract cannot be construed as imposing a duty on Camcraft to supervise the construction of the vessel. See Williams v. Gervais F. Favrot Company, 499 So.2d 623 (La.App. 4th Cir.1986), writ denied 503 So.2d 19 (La.1987); Villaronga v. Gelpi Partnership Number 3, 536 So.2d 1307 (La.App. 5th Cir.1988), writ denied 540 So.2d 327 and 540 So.2d 329 (La. 1989). The terms of the agreement are clear and unambiguous, not in violation of statutory law or public policy.
In the absence of written reasons for judgment, we can only assume the trial judge found that plaintiffs proved that Camcraft had a duty to supervise the construction of the Southern Crescent based on the contract entered into between Camcraft and A-I Industries, as plaintiffs offered no other evidence at trial to prove that the alleged duty existed.
Because we find the express language of the contract between Camcraft and A-I Industries neither provided for nor imposed a duty to supervise the construction of the vessel on Camcraft, and because the watercraft exclusion of the general comprehensive liability policy issued by Continental to Camcraft expressly barred coverage for plaintiffs' claims against Camcraft, as owner of the vessel, we conclude the trial judge was clearly wrong in finding that Continental Insurance Company provided insurance coverage to Camcraft for claims alleged by plaintiffs.
Accordingly, we reverse the judgment of the trial court and dismiss plaintiffs' claims against Continental Insurance Company.
REVERSED.