**INSURANCE COMPANY OF NORTH AMERICA**

v.

**WEST OF ENGLAND SHIPOWNERS MUTUAL INSURANCE ASSOCIATION.**

Civ. A. No. 93–076.

United States District Court, E.D. Louisiana.

July 14, 1995.

Peter L. Hilbert, Jr. and Darnell Bludworth, McGlinchey, Stafford & Lang, New Orleans, LA, for Ins. Co. of North America.

George W. Renaudin and George H. Lugrin, IV, Griggs & Harrison, Houston, TX, for Griggs & Harrison.

George Moore Gilly and Stephanie G. McShane, Phelps Dunbar, New Orleans, LA, for West of England Shipowners Mut. Ins. Ass'n (Luxenberg).

Joseph J. Weigand, Jr., Joseph J. Weigand, Jr., A.P.L.C., Houma, LA, for Best Workover Inc., Gantry Well Service, Inc., Best Oilfield Services, Inc., and Workover 300 Inc., Best Workover Inc., Gantry Well Service, Inc., Best Oilfield Services, Inc., Workover 300 Inc., Darrell Brewer, Houma, LA, pro se.

David F. Bienvenu, James R. Sutterfield, and Renee Summer Melchiode, Hoffman, Sutterfield, Ensenat & Bankston, New Orleans, LA, for Institute of London Underwriters Companies.

### ORDER DENYING MOTION FOR SUMMARY JUDGMENT

VANCE, District Judge.

This matter is before the Court on a motion for summary by third-party defendants 1990–1991 and 1991–1992 Excess MEL In-

surers. The motion is denied for the reasons that follow.

## I. BACKGROUND

Insurance Company of North America ("INA") filed this suit against West of England Shipowners Mutual Insurance Association ("West of England") to recover amounts INA expended for defense and settlement of claims filed by members of the crew of the Barge REBSTOCK NO. 3. West of England answered INA's complaint and filed third-party complaints against certain underwriters and Excess MEL Insurers. West of England asserts that it is subrogated to the rights of its insured to assert claims against the Excess MEL Insurers and that the excess insurers are liable both for any amounts due INA and for approximately $600,000 that West of England expended for defense and settlement of claims against its insured. West of England's claim for reimbursement of the $600,000 it has paid is based on its claim that the protection and indemnity ("P & I") policy it issued to Best Workover, Inc. and its related companies [1] is void *ab initio* because of alleged material misrepresentations in the application for insurance.

By this motion, the Excess MEL Insurers seek summary judgment dismissing West of England's claims against them on the basis that West of England has waived its rights to void the P & I policy by paying claims when it knew or should have known of the alleged material misrepresentations. Additionally, Excess MEL Insurers dispute that West of England has subrogation rights against them. Finally, Excess MEL Insurers assert that West of England cannot recover from them because their policies excluded coverage for claims filed by the crew on watercraft owned by the assured. West of England opposes summary judgment arguing that Excess MEL Insurers have no standing to assert that it waived its right to void the policy and claims that it is subrogated to the rights of the insured to the extent that it has paid. Further, West of England argues that the watercraft exclusion does not apply to claims involving the Barge REBSTOCK NO. 3 be-

cause that barge was not owned by Best Workover, Inc., but by Gantry Services, Inc.

## II. ANALYSIS

Louisiana law governs this marine insurance dispute because there is no controlling federal precedent on the issues of waiver, subrogation or the interpretation of MEL policies. *Albany Ins. Co. v. Anh Thi Kieu*, 927 F.2d 882, 886 (5th Cir.), *cert. denied*, 502 U.S. 901, 112 S.Ct. 279, 116 L.Ed.2d 230 (1991).

### A. *Waiver*

■ West of England's third-party demand seeks to hold excess MEL Insurers liable for amounts paid in settlement and defense of personal injury claims filed by the crew of the Barge REBSTOCK NO. 3. West of England argues that the claims were paid in error because the policy is void *ab initio* based on the insured's material misrepresentations concerning the number of crew that would be aboard the Barge REBSTOCK NO. 3. Whether the policy is in fact void is not before the Court on this motion. Excess MEL Insurers argue, however, that West of England waived any right it may have had to void the policy because it paid claims under the policy with knowledge or constructive knowledge of the alleged material misrepresentations. *Steptore v. Masco Const. Co., Inc.*, 643 So.2d 1213 (La.1994). West of England contests Excess MEL Insurers' standing to assert waiver.

■ Generally, waiver of a policy defense can only be asserted by parties to the insurance contract. 46 C.J.S. § 788 (1993). *But see FDIC v. Duffy*, 47 F.3d 146 (5th Cir.1995) (finding standing to assert waiver in inapposite context of injured third party under Louisiana Direct Action Statute, La.R.S. 22:655). In addition, while this Court has ruled, in its order on the cross-motions for summary judgment by INA and West of England, that INA had standing to assert waiver by West of England because INA was subrogated to the rights of its insured, Ex-

---

1. The insureds under the West of England P & I policy are Best Workover, Inc.; Gantry Services, Inc.; Best Oilfield Services, Inc.; and Workover 300, Inc.

cess MEL Insurers are in a fundamentally different position.

Excess MEL Insurers are strangers to the policy relationship between West of England and its insured. Unlike INA, Excess MEL Insurers, having paid nothing on behalf of their insured, are not subrogated to the rights of the insured. Further, unlike the plaintiff in *FDIC v. Duffy, supra,* Excess MEL Insurers are not injured third parties within the meaning of the Louisiana Direct Action Statute. For these reasons, the Court finds that Excess MEL Insurers lack standing to assert waiver by West of England of its defenses under the policy.

### B. *Subrogation*

■ West of England claims the right to assert the present claims against Excess MEL Insurers arises by virtue of subrogation. West of England claims that it is subrogated to the rights of its insured to the extent that it has paid on behalf of the insured. Excess MEL Insurers argue that West of England has no subrogation rights against them because the insured would have no rights to sue Excess MEL Insurers since its claims have been satisfied. Excess MEL Insurers misunderstand the effect of subrogation, which allows a person who performs the obligation of another to stand in the shoes of the person on whose behalf the obligation was performed and assert rights that existed prior to performance of the obligation. *See* La.Civ. code art. 1826 ("When subrogation results from a person's performance of the obligation of another, that obligation *subsists* in favor of the person who performed it who may avail himself of the action and security of the original obligee against the obligor, but is extinguished for the original obligee.") (emphasis added).

Rights of subrogation can arise in one of two ways—by operation of law or by contractual provision. *Martin v. Louisiana Farm*

*Bureau Casualty Ins. Co.,* 638 So.2d 1067 (La.1994). West of England's P & I policy with Best Workover contains a subrogation clause;[2] however, West of England argues that the policy is void *ab initio.* If the factfinder determines that the policy is void, West of England cannot rely on the subrogation clause in the policy to assert a right of conventional subrogation. Further, there would be no legal subrogation because legal subrogation under La.Civ.Code art. 1829(3) requires that the payor be an *"obligor* who pays a debt *he owes"* with or for others. La. Civil Code art. 1829(3) (emphasis added). If the policy never existed, West of England was never obligated to pay and cannot claim legal subrogation. As stated, the voiding of the policy is not before the Court on this motion and, therefore, West of England's subrogation rights, although put at issue by Excess MEL Insurers, cannot be determined in the context of this motion for summary judgment. The Court is mindful that if subrogation applies, West of England may not have any greater rights than its insured had against the Excess MEL Insurers.[3] The Court is, therefore, expressing no opinion as to the extent of West of England's right to recover from the Excess MEL Insurers in the event it cannot void its P & I policy and its subrogation rights are sustained.

### C. *Watercraft Exclusion*

■ Excess MEL Insurers argue that they are not liable to West of England under their policies because the policies contained exclusions from coverage for the captain and crew of assured's owned water craft. Endorsements to each of the policies issued by Excess MEL Insurers to the assured companies listed Best Workover, Inc. and Gantry Services, Inc., among other related companies, as assureds. The exclusion Excess MEL Insurers rely upon provided:

The indemnity granted under this policy shall not apply:—

---

2. The subrogation clause in West of England's P & I policy states as follows:

Subrogation. The Assurers shall be subrogated to all the rights which the Assured may have against any other person or entity, in respect of any payment made under this policy, to the extent of such payment, and the Assured shall,

upon the request of the Assurers, execute all documents necessary to secure the Assurers such rights.

3. The Excess MEL policies state that they provide excess maritime liability coverage in the amount of $475,000 in excess of $25,000.

(1) to liability to captain and crew of, and ~~employees~~ on assured's owned and/or ~~operated watercraft~~.

Ex. A to excess MEL Insurers Motion, "MEL Endorsement No. 1, Exclusions." Additional endorsements clarified that the word "watercraft" was not intended to be deleted.

The clause excludes coverage of claims filed by the crew of a watercraft *owned by assured*. West of England contends that Best Workover operated the Barge REBSTOCK NO. 3 and Gantry owned the barge. In support of this contention, West of England cites the deposition of Darrell Brewer, the president of Best Workover and Gantry. Ex. B to West of England Opposition, Brewer Depo. at 19. West of England asserts that the exclusion does not apply because all claimants were employees of Best Workover, the operator, rather than Gantry, the owner.

■ Excess MEL Insurers argue that the exclusion should be applied to all of the assureds collectively. They claim that since *an* assured owned the Barge REBSTOCK NO. 3, the exclusion applies. Secondly, Excess MEL Insurers assert that even if Best Workover operated and Gantry owned the watercraft, since Best Workover wholly owns Gantry, it owns the barge through its ownership of Gantry.

■ Under Louisiana law, exclusionary provisions in insurance policies are construed narrowly against the insurer, and the insurer has the burden of proving that the exclusion applies. *Farrell Lines, Inc. v. Insurance Co. of North America*, 789 F.2d 300, 306 (5th Cir.1986). The Louisiana Supreme Court has ruled that the applicability of a policy exclusion is determined with regard to each insured separately, rather than collectively. *Pullen v. Employers' Liability Assurance Corp.*, 230 La. 867, 89 So.2d 373, 377 (1956). In *Pullen*, plaintiff was injured in the course and scope of his employment while helping to load a dragline onto a truck. Defendant Mitchell was operating the dragline during loading when it came into contact with an electric wire, electrocuting the plaintiff. A policy of insurance covered plaintiff's employer as an insured. In addition, the policy had an omnibus clause that covered any person using the dragline as an "insured." Therefore, plaintiff's employer and Mitchell, the alleged tortfeasor, were both "insureds" under the policy. Plaintiff's widow sued Mitchell and the insurance carrier. The insurer denied coverage under the policy based on the following exclusion:

> This policy does not apply:
>
> (c) to any obligation for which the insured or any company as his insurer may be held liable under any workmen's compensation law;
>
> (d) to bodily injury to or sickness, disease or death of an *employee of the insured* while engaged in the employment of the insured.

*Id.* 89 So.2d at 374 (emphasis added).

The insurer argued that since plaintiff was an employee of an insured who was injured while engaged in his employment, the exclusion applied. Plaintiff argued that since he was not an employee of Mitchell, the exclusion did not apply. The issue before the Court was whether defendant Mitchell was "the insured" referred to in the exclusion or whether the employer's status as an insured controlled to bar coverage. The Court ruled that since Mitchell was the only insured whom the plaintiff sought to hold liable, "the insured" referred to in the exclusion, for purposes of that case, was Mitchell, and the employer's status as an insured did not affect the coverage of claims asserted against Mitchell. *Id.* at 377–78. Therefore, the exclusion did not apply. The Court stated:

> Insofar as the pleadings are concerned, there is no other insured [other than Mitchell] involved in this proceeding. But even if any other insured or any number of insureds were involved directly or indirectly and whether or not their liability was sought, *the test of identification for exclusion must be applied to each specifically and not to all collectively* . . .

*Id.* (emphasis added).

This Court applied the reasoning of *Pullen* to a watercraft exclusion identical to the one at issue here in *Collins v. Coastline Construction, Inc.*, No. 92–16, 1992 WL 176138

(E.D.La. July 14, 1992).[4] In *Collins*, the Court stated that coverage for an employer/contractor that was an "assured" under the policy and that neither owned nor operated the vessel on which plaintiff was injured would not be affected by the watercraft exclusion. *Id.* at *2. This was true even though plaintiff was injured on a vessel *operated* by Shell Oil Company who was also an "assured" under the policy. *Id.*

■ Under the analysis applied in *Pullen* and *Coastline*, the applicability of the Excess MEL Insurers' policy exclusion must be determined by reference to each insured individually.[5] Thus, that *an* insured owned the barge is insufficient to invoke the exclusion. Rather, the cases discussed above indicate that identification of the "assured" for purposes of applying an exclusion depends upon the identity of the insured against whom the underlying claim was filed.[6] Therefore, if the underlying claims for which West of England seeks reimbursement were filed against the owner of the barge, the exclusion applies. On the other hand, if the claims were filed against the operator, the exclusion does not apply, based on the striking of the word "operated" in the exclusion.[7] The Supreme Court stated:

> The exclusion clause, as its name implies, sets forth the traits, characteristics and circumstances that mark an insured for exclusion. And the insured or insureds to be excluded must bear the marks and traits, or conform with the circumstances, described and particularized in the exclusion clause as the basis for exclusion.

*Pullen,* 89 So.2d at 377. If Best Workover, Inc. was simply the operator of the barge and not the owner, as West of England contends, it would bear none of the traits that would target it for the exclusion. It would not have been the owner of the vessel and, though it operated the vessel, the term "operated" was deleted.

Excess MEL Insurers argue that the separate corporate identities of Gantry and Best Workover should be ignored because Gantry is wholly-owned by Best Workover. However, they fail to establish a legal or factual basis for disregarding the separate corporate identity of Gantry. Since there is record evidence that Gantry and Best Workover were separate corporate entities that had separate functions and assets (*i.e.,* Darrell Brewer's testimony that Best operated and Gantry owned the barge), the Court finds that, at a minimum, fact issues preclude summary judgment on whether Best Workover should be deemed the owner of the barge. *Cf. Terra Resources, Inc. v. Lake Charles Dredging & Towing Inc.,* 695 F.2d 828, 831 (5th Cir.1983) (court treated parent and subsidiary corporation as separate entities with regard to application of watercraft exclusion).

---

4. The exclusion at issue in *Collins* stated:
   > The indemnity grated under this policy shall not apply:
   > 1) to liability to Captain and Crew, and employees on, Assured's owned and/or operated watercraft;
   The only distinction between that exclusion and the one at issue in this case is that the words "employee" and "operated" have not been stricken.

5. Case law indicates that if Excess MEL Insurers wanted the watercraft exclusion to apply to multiple insureds collectively, there is language available to effect this result. In *Farrell Lines, supra,* the Fifth Circuit considered the following exclusion in an INA policy:
   > This insurance does not apply:
   > (e) to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading, or unloading of
   > (1) Any watercraft owned or operated by or rented or loaned to *any* insured . . .

*Farrell Lines,* 789 F.2d at 302, n. 1 (emphasis added).

6. That the insured against whom the claim is filed is the relevant insured for purposes of determining whether the exclusion applies is evidenced in this statement by the Louisiana Supreme Court:
   > There can hardly be any dispute as to whether Mitchell is the insured sought to be excluded from coverage by the exceptions, because he is the only insured against whom liability is sought and through whom [the insurer] is sought to be held.
   *Pullen,* 89 So.2d at 377.

7. Though West of England asserts that all claimants it paid were *employed* by Best Workover, Inc., that employment relationship does not foreclose the possibility that some claims were filed against Gantry as owner. Excess MEL Insurers have offered nothing on the issue of which insured the underlying claims were filed against.

Excess MEL Insurers have not demonstrated that the underlying claims were made against the owner of the Barge REBSTOCK NO. 3. In light of the Court's ruling on the interpretation of the exclusion, such a demonstration is crucial for determining whether the exclusion applies. Therefore, the motion for summary judgment on the basis of the applicability of the exclusion must fail. Accordingly,

IT IS ORDERED that the motion for summary judgment is DENIED.