Gary FOSTER,

v.

SUBSEA INTERNATIONAL, INC.,

No. Civ.A. 96–4056.

United States District Court,
E.D. Louisiana.

July 27, 1998.

Leonard Cardenas, III, Baton Rouge, LA, David Lawrence Bateman, David L. Bateman, PLC, Baton Rouge, LA, for Gary Foster.

James E. Wright, III, William Joseph Joyce, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, LA, William Sean O'Neil, O'Neil Eichin, New Orleans, LA, Ronald Adams Johnson, Johnson, Johnson, Barrios & Yacoubian, New Orleans, LA, Rufus C. Harris, III, Alfred Jackson Rufty, III, Harris & Rufty, LLC, New Orleans, LA, Cindy Teresa Matherne, Sher Garner Cahill Richter Klein McAlister & Hilbert, LLC, New Orleans, LA, for SubSea Intern., Inc., Curtis Callais Welding, Inc., C&G Welding, Inc. and St. Martin & Mahoney.

George James Richaud, Young, Richaud & Myers, New Orleans, LA, for American Empire Surplus lines Ins. Co.

## ORDER AND REASONS

CHARLES SCHWARTZ, Jr., District Judge.

Before the Court is Sub Sea International Inc.'s ("Sub Sea") motion for summary judgment seeking contractual defense and indemnity from C & G Welding, Inc. ("C & G"), and insurance coverage from American Empire Surplus Lines Insurance Company ("American Empire"). Both American Empire and C & G filed timely opposition with respect to this motion. In turn, American Empire filed a cross motion for summary judgment claiming that the American Empire insurance policy at issue excludes Sub Sea from coverage because Sub Sea was the owner and operator of the vessel on which plaintiff Gary Foster was injured. Additionally, counsel for C & G filed a cross motion for summary judgment claiming that it does not owe Sub Sea contractual defense and indemnity under the terms of the master agreement because plaintiff Gary Foster is a "longshoreman." These matters were noticed for hearing on July 8, 1998, but as oral argument was not requested, these matters were submitted for decision on the briefs and documents of record. For the reasons set forth herein below, American Empire's motion for summary judgment is denied, Sub Sea's motion for summary judgment is granted in part and denied in part, and C & G's motion for summary judgment is denied.

## BACKGROUND

Plaintiff Gary Foster was part of a crew of approximately 8 pipe welders and 15 welder's helpers provided by C & G to work alongside and under the direction of Sub Sea welders aboard the LB 278, a pipelaying barge. C & G provided the welding crew pursuant to a contractual arrangement between Sub Sea and C & G.

The terms of this contractual arrangement were set forth in the Master Service Contract,[1] which, *inter alia*, requires C & G to defend, indemnify, and provide certain insurance coverage to Sub Sea, protecting Sub Sea from claims by C & G's employees.

While working aboard Sub Sea's pipe laying barge LB–278,[2] plaintiff Gary Foster allegedly slipped on a welding lead and extension cord (collectively the "welding cables") laying on the deck of the barge and fell, sustaining injuries. Foster initially filed suit against Sub Sea under the Jones Act. Thereafter, plaintiff filed two amending complaints for damages, alleging that he was employed by C & G, and that C & G was responsible for his injuries.

Four motions are currently pending before the Court. Sub Sea seeks summary judgment holding that the indemnity provisions contained in the Master Service Contract are enforceable. C & G opposes this motion and simultaneously seeks summary judgment holding that it does not owe a duty to defend or indemnify Sub Sea because plaintiff Gary Foster was a longshoreman within the meaning of the Longshoremen and Harbor Workers Compensation Act ("LHWCA"). Sub Sea also seeks summary judgment holding that it is covered under the terms of American Empire's insurance policy[3] (American Empire Policy No. 6EX00771) as an alternate employer. Conversely, American Empire seeks summary judgment holding that Sub Sea is not covered under the terms of the subject insurance policy. Each of these motions will be addressed in turn.

### ANALYSIS

Summary Judgment is appropriate when "all of the pleadings, depositions, answers to interrogatories, admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party need not support its motion with affidavits or other evidence, but to defeat a motion for summary judgment the non-movant must present evidence sufficient to establish the existence of each element of his claim as to which he will have the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The inferences drawn from the underlying facts, however, must be viewed in a light most favorable to the non-moving party. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 588, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Finally, the Court notes that the substantive law determines materiality of facts, and only "facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

### I. C & G's Motion for Summary Judgment Seeking Dismissal of Sub Sea's Cross Claim for Indemnity and Defense

Sub Sea submits that the Master Service Contract between Sub Sea and C & G is a maritime contract and that the indemnity provisions contained therein are enforceable. Notwithstanding plaintiff's complaint, C & G contends that Gary Foster is not a seaman, but a longshoreman who was injured on navigable waters. C & G submits that because Foster is a longshoreman, the contractual obligations between Sub Sea and C & G are governed by section 905(b) of the LHWCA. C & G claims that section 905(b) voids any indemnity obligation of the longshoreman's em-

---

1. Rec.Doc. No. 65, Ex. "D".

2. At the time of the alleged accident, plaintiff Gary Foster was working for Sub Sea as part of the contractual arrangement between C & G and Sub Sea.

3. Rec.Doc. No. 65, Ex. "E".

ployer [C & G] to the vessel owner [Sub Sea].

■ In order to unravel the Gordian knot, the Court must first determine whether summary judgment is appropriate with respect to plaintiff Gary Foster's status as a "seaman" within the meaning of the Jones Act.[4] Gary Foster claims that he worked on Sub Sea's barge 278 for approximately two and a half weeks before his accident. See, Rec.Doc. No. 70, Ex. "C" (Memorandum in Opposition to Sub Sea's Motion for Summary Judgment). Foster admitted that he had never worked on a Sub Sea barge prior to this particular job. *Id.* Foster also admitted that the vessels on which he had previously worked were neither owned by C & G nor C & G's affiliated company, Curtis Callais Welding. Additionally, Foster testified that the various barges on which he worked did not have anything to do with one another. *Id.*

■ There are two essential requirements for seaman status under the Jones Act.

"First ... an employee's duties must contribute to the function of the vessel or to the accomplishment of its mission.... Second, and most important for our purposes here, a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature."

*Chandris, Inc. v. Latsis,* 515 U.S. 347, 368, 115 S.Ct. 2172, 2179, 132 L.Ed.2d 314 (1995). The Supreme Court has specifically rejected a "voyage test" of seaman status, concluding that an employee who was injured while performing his duties on a vessel on the high seas was not necessarily a Jones Act seaman. *Id.,* 515 U.S. at 358–364, 115 S.Ct. at 2184–2188.

C & G contends that plaintiff Foster cannot establish seaman status because he lacks a connection to a vessel in navigation

that is substantial in terms of both its duration and its nature. The issue before the Court, distilled to its essence, is whether Foster may qualify for Jones Act status when his durational connection to Sub Sea Barge 278 was for a time period between ten days and two and a half weeks.

The Supreme Court stated in *Chandris* that the ultimate inquiry in resolving seaman status is "whether the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on the vessel at a given time." *Id.* at 2191. While the law requires that a "seaman" have a connection to a vessel that is substantial in terms of both duration and nature, the inquiry is one encompassing the totality of the circumstances. *Id.* at 2190. The analysis of seaman status, and ultimately of whether an employee's connections are substantial in duration and nature, may include a multiplicity of factors. See, *Bertrand v. International Mooring & Marine, Inc.,* 700 F.2d 240 (5th Cir.1983). The number of days which plaintiff intended to work aboard Sub Sea's Barge 278 is only one such factor.

■ In the instant matter, it is clear that Foster was performing the "normal crew service" of Sub Sea's barge 278. He worked alongside Sub Sea welders, performing the functions of a welder's helper on a pipe laying barge. This job was essential to the mission of the vessel. Furthermore, while working on the barge in the Galveston Island Area, Block 301, plaintiff was certainly exposed to the perils of the sea, the protection from which was the purpose of the Jones Act. As it is the temporal element and the nature of the activities performed that determine seaman status, the Court cannot conclude as a matter of law that Foster's relationship with Sub Sea's Barge 278 was too short to satisfy the durational requirement imposed by *Chandris.* See, *Foulk v. Donjon Ma-*

---

**4.** It is well established that the LHWCA and the Jones Act are mutually exclusive, as masters and crewmembers are excluded from coverage under the LHWCA. See, *Chandris v. Latsis,* 515 U.S. at 355–358, 115 S.Ct. at 2183.

*rine Co., Inc.,* 144 F.3d 252 (3rd Cir.1998) (Holding that an intended 10 day term of employment aboard a vessel was sufficient to create a genuine issue of material fact with respect to whether plaintiff (a diver) was a Jones Act seaman). Accordingly, C & G's Motion for Summary Judgment seeking dismissal of Sub Sea's cross claims against it are denied.

## II. Sub Sea's Motion for Summary Judgment Regarding Contractual Defense and Indemnity Allegedly Owed by C & G

Sub Sea submits that the Master Service Contract (Rec.Doc. No. 65, Ex. "D") (the "agreement") between Sub Sea and C & G is a maritime contract and that the indemnity provisions contained therein are enforceable. C & G does not contest that the agreement is a maritime contract, but asserts that it does not have a duty to indemnify Sub Sea because the plaintiff is a longshoreman, and such indemnity agreements are voided by section 905(b) of the Longshoremen's and Harbor Worker's Compensation Act.

■ The Court first addresses the duty of the indemnitor to defend. "In determining whether an indemnitor or an insurer is obligated to defend an indemnitee or insured under the terms of an indemnity or insurance contract, the Louisiana courts look exclusively to the pleadings in light of the contract provisions; the ultimate outcome of the case has no effect upon the duty to defend." *Sullen v. Missouri Pacific R. Co.,* 750 F.2d 428, 433 (5th Cir. 1985).

■ The indemnitee provision contained in the Master Service Agreement between Sub Sea and C & G provides:

4. INDEMNITY

. . . .

(b) CONTRACTOR [C & G] shall be responsible, and COMPANY [Sub Sea] shall never be liable for property damage suffered by any person, firm or corporation, for personal injury to or death of any person, including, but not limited to, CONTRACTOR, any of CONTRACTOR's employees or the employees of CONTRACTOR's subcontractors, and CONTRACTOR agrees to indemnify and hold harmless COMPANY, against any and all claims, demands or suits . . . which may be brought against COMPANY by any party, including, but not limited to, any employee of CONTRACTOR . . . in any way arising out of or incident to the work to be performed under this contract. . . .

Rec.Doc. No. 65, Ex. "D", p. 2, ¶ 4. In the instant matter, plaintiff has asserted a claim under the Jones Act against Sub Sea. This type of claim was expressly contemplated by the Master Service Contract as the alleged injury arose out of the work performed under the instant contract. The allegations contained in plaintiff's complaint claim that plaintiff is a Jones Act "seaman." Therefore, in so far as "the duty to defend" is concerned, it is of no moment that plaintiff may ultimately be classified as a longshoreman since the ultimate outcome of the case has no effect upon the indemnitor's duty to defend. Accordingly, C & G is obligated to defend Sub Sea under the express terms of the indemnification provisions contained in the Master Service Contract.

■ As to the duty to indemnify, Sub Sea aptly points out the following provision contained in the Master Service Contract:

3. *INSURANCE*

CONTRACTOR [C & G] agrees to procure, maintain, and amend, at is sole expense, policies of insurance in the amounts outlined on that certain document attached hereto as Exhibit "A", which may from time to time be changed in accordance with COMPANY's [Sub Sea's] request as its needs and requirements change, which coverage shall fully address the liabilities assumed hereunder.

. . . Said policies shall further contain endorsements naming COMPANY as an

additional insured under said policies and waive the underwriters' rights of subrogation in favor of COMPANY, its affiliates, subsidiaries and joint venturers.

Rec.Doc. No. 65, Ex. "D", p. 2, ¶ 3.

■ C & G correctly observes that if plaintiff Gary Foster is a longshoreman within the meaning of the LHWCA, the indemnitee provisions contained in the Master Service Contract are voided by section 905(b) of the LHWCA.[5] Although section 905(b) of the LHWCA voids indemnitee agreements between the employers of longshoremen and a vessel owner, the Fifth Circuit has held that section 905(b) does not void an agreement by an employer to name a vessel owner as an additional assured on its liability insurance policies. *Voisin v. Odeco Drilling Co.*, 744 F.2d 1174 (5th Cir.1984).

The insurance contract obtained by C & G through American Empire, ostensibly for the benefit of Sub Sea, contains the following exclusion:

B. Exclusions

This insurance does not apply to:

. . .

4. Any obligation assumed by or imposed upon the Insured or us under any Longshoreman and Harbor Workers Compensation Act, workers compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law;

Rec.Doc. No. 65 Ex. "E" pp. 1–2. Thus, if plaintiff is a longshoreman, C & G has breached its obligation under Section three (3) of the Master Service Contract to name Sub Sea as an additional insured. Consequently, C & G owes Sub Sea a defense and indemnity even if plaintiff is determined to be a longshoremen within the meaning of the LHWCA. See, *Harper v. Intracoastal Truck Lines*, 451 So.2d 1289, 1291 (1984).[6]

### III. Sub Sea and American Empire's Cross Motions for Summary Judgment on Coverage Under American Empire's Policy of Insurance.

■ Sub Sea and American Empire have filed cross motions for summary judgment with respect to the issue of insurance coverage. Summary judgment with respect to this issue is premature at this stage as the policy at issue contains ambiguous language. Specifically, the policy is ambiguous with respect to whether an "Alternate Employer"[7] is an "insured"

---

**5.** Section 905(b) provides in pertinent part:

In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person . . . may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. . . .

33 U.S.C. § 905(b).

**6.** In *Harper*, Roustabout, a contractor, was required by its contract with Intracoastal, a corporation, to name Intracoastal as an additional insured with respect to all claims arising out of any work performed by contract labor and personnel furnished by Roustabout. Roustabout failed to name Intracoastal as an additional insured. The First Circuit held that Roustabout's failure to name Intracoastal as an additional insured was a breach of contract entitling Intracoastal to an award of expenses, including attorney's fees, of defending the suit brought by employee. 451 So.2d 1289, 1290–1291.

**7.** See, Rec.Doc. No. 65, Ex. "E" "Alternate Employer Endorsement".

*ALTERNATE EMPLOYER ENDORSEMENT* This endorsement applies only with respect to bodily injury to your employees while in the course of special or temporary employment by the alternate employer in the territory named in Item 4 of the Declarations. Insurance afforded by this policy will apply as though the alternate employer is the insured.

. . .

The Insuring Agreements, Exclusions and Conditions of this Policy shall apply to the alternate employer, exception Condition 1, Cancellations shall not apply to the alternate employer.

within the meaning of the policy. Section IV of the policy defines "Insured" as follows:

1. Insured. The unqualified word "insured", wherever used in this policy, includes:

    a) The Named Insured shown in Item 1 of the Declarations;

    b) If the Named Insured in Item 1 of the Declarations is designated as a partnership or joint venture, any partner or member thereof but only with respect to the conduct of your business;

    c) Your executive officers and directors, but only with respect to their duties as your officers and directors;

    d) Your stockholders, but only with respect to their liability as stockholders.

    No person or organization is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

Rec.Doc. No. 65, Ex. "E". Clearly, the definition of "insured" does not include "Alternate Employer's." Yet, the policy contains an Alternate Employer Endorsement which provides:

The Insuring Agreements, Exclusions, and Conditions of this Policy shall apply to the alternate employer, except Condition 1., Cancellation, shall not apply to the alternate employer.

Rec.Doc. No. 65, Ex. "E" "Alternate Employer Endorsement." The Court finds that the policy language is ambiguous, and thus the issue of insurance coverage warrants a full hearing.

Although summary judgment is not appropriate at this time, the Court cannot help but offer the following observation. American Empire submits that its policy permits recovery under the Jones Act against an employer who is not the owner or operator of the particular vessel on which the plaintiff is injured. See, American Empire's Opposition to Sub Sea's Motion for Summary Judgment, p. 5. [Rec. Doc. No. 69]. The Endorsement (Exclusion) which American Empire claims excludes Sub Sea's claim reads as follows:

It is agreed and understood that Exclusion No. 1 is deleted and replaced with the following: [The following is excluded from coverage]

1. Any liability of the insured to the captain or crew of any watercraft or vessel which is owned chartered loaned to rented to or **operated by or for any insured.**

Rec.Doc. No. 65, Ex. "E", Amendatory Endorsement (Watercraft Exclusion) (emphasis added). The Fifth Circuit has interpreted this clause to deny coverage to **all** insured when an injury occurs on a vessel owned or operated by **any** insured. See, *Farrell Lines, Inc. v. Insurance Co. of North America,* 789 F.2d 300 (5th Cir. 1986); See also, *Insurance Company of North America v. West of England Shipowners Mutual Ins. Ass'n.,* 890 F.Supp. 1296, 1301 n. 5 (E.D.La.1995). Accordingly, if Alternate Employer's are "insured" within the meaning of the subject policy, as American Empire submits, neither C & G nor Sub Sea are entitled to coverage under the unambiguous terms of the insurance policy.

The Court further notes that summary judgment is not appropriate at this time for an additional reason. The American Empire insurance policy at issue clearly excludes coverage for longshoremen. Rec. Doc. No. 65 Ex. "E" pp. 1–2. As the issue of seaman versus longshoreman status has been referred to the merits, summary judgment with respect to the insurance coverage issue is premature. See, Discussion in Section I, *supra.*

Accordingly, and for all of the above and foregoing reasons,

IT IS ORDERED that Sub Sea's Motion for Summary Judgment seeking contractual defense and indemnity from C & G Welding is GRANTED.

IT IS FURTHER ORDERED that Sub Sea's Motion for Summary Judgment seeking insurance coverage from American Empire is DENIED.

IT IS FURTHER ORDERED that American Empire's Motion for Summary Judgment seeking a ruling that Sub Sea is not covered by the terms of the subject insurance policy is DENIED.

IT IS FURTHER ORDERED that C & G's Motion for Summary Judgment seeking an order voiding C & G's contractual defense and indemnification obligations is DENIED.