I JAMES L. CANNELLA, Judge.
The cross-claim Plaintiff, John H. Carter, Co., Inc. (Carter), appeals from a judgment denying its motion for summary judgment, dismissing its cross-claim and granting the motion for summary judgment filed by cross-claim Defendants, National Union Fire Insurance Company of Pittsburgh, PA (National Union), Fisher Services Company and Fisher Controls International, Inc. (Fisher.) We reverse both summary judgments and grant the summary judgment filed by Carter and deny the summary judgment filed by Fisher and remand.
Carter became a sales representative for Fisher on April 1, 1989. The terms of the agreement are set out in a Representative Agreement that was executed annually. The agreement included a provision in which Fisher would defend and indemnify Carter for Fisher’s acts. This was provided for in a vendor’s endorsement naming Carter as an additional insured under the policy of insurance issued to Fisher’s parent company. In 1992, Fisher was sold to Emerson Electric Corporation (Emerson). Emerson was unable to provide a vendor’s endorsement for Carter so the companies supplemented the Representative Agreement to cover the indemnity provision.
lain October of 1998, a fire occurred at a refinery which was owned and operated by Star Enterprise (Star), one of Carter and Fisher’s customers. In August of 1994, Star sued Fisher, Carter and several insurance companies, claiming that the fire was caused by defective welding of a control rod at the refinery. The fire allegedly occurred because of the presence of hydrogen sulfide in the lines. Star contended that Carter and Fisher failed to warn that the presence of hydrogen sulfide required the weld to be heat treated. On September 8, 1994, Carter demanded that Fisher provide it with a defense and for indemnity under the Representative Agreement. Two weeks later, Fisher sent a letter to Carter setting out the terms of their defense. Shortly after, the suit against Carter was dismissed as a non-suit. The parties agree that Carter was initially sued in its representative capacity, rather than for Carter’s own negligence.
National Union, Fisher’s insurer, was named as a Defendant in 1998. In January of 1999, Star filed a seventh petition bringing Carter back into the lawsuit[1]. The petition alleged that both Fisher and Carter had a legal obligation to provide warnings, that Carter was jointly and solidarity liable with Fisher for its negligence, and alternatively, that Carter was independently negligent in failing to provide Star with appropriately trained personnel for technical advice. Fisher and National Union refused to defend and indemnify.Carter for these demands because of Star’s allegations of Carter’s independent negligence. As a result, Carter filed a cross-claim against Fisher and National Union on July 20, 1999 (in its answer to the amended petition). In answer to the Star petition, Carter alleged that it owed no duty to Star because it was only a sales *719 representative of Fisher products and services, and since Fisher was the primary defendant, Carter should be released. In Carter’s cross-claim, it alleged that 14Fisher breached its indemnity agreement to provide Carter with a defense and indemnity. Alternatively, Carter alleged that indemnity was owed because Carter was simply a seller under C.C. art. 2531, that any negligence on Carter’s part was passive, that Carter undertook to perform work that Fisher authorized Carter to solicit and obtain for Fisher, and alternatively that Fisher owed Carter contribution in the proper proportion.
On November 13, 1999, Carter filed a motion for summary judgment in the Star suit. On December 2, 1999, the trial judge granted Carter’s motion for summary judgment. He concluded that Carter was “merely a sales representative” and had no obligation to give technical advice or to provide engineering services to Star. Judgment was rendered in favor of Carter on December 6, 1999, dismissing Star’s claims against Carter.
On May 1, 2000, National Union filed a motion for summary judgment in the cross-claim filed by Carter, alleging that Fisher and National Union did not agree to defend and indemnify Carter for Carter’s acts of negligence or omissions. Fisher joined in the motion. On June 26, 2000, Carter filed a cross-motion for summary judgment. Carter asserted that there was no material issue of fact, that Fisher and National Union owed it indemnity and a defense, that Fisher and National Union waived any coverage defense, and that they failed to provide Carter with proper notice of intent to withdraw a defense and indemnity. The motions were heard on August 10, 2000. On December 2, 2002, the trial judge found in favor of Fisher and National Union, granted their motions, denied Carter’s motion for summary judgment and dismissed Carter’s cross-claims.
On appeal, Carter asserts that the trial judge erred in dismissing its claims. Carter asserts that the supplement to the Representative’s Agreement, which was effective August 26, 1993, and the subsequent letter agreement, support its Imposition. It further asserts that National Union is liable under the insurance policy issued to Fisher.
Carter argues that the question of whether an indemnitor (Fisher) owes a duty to defend and indemnify an indemni-tee (Carter) when the indemnitee is sued for individual negligence is determined by the outcome of the suit, not by the allegations of Plaintiffs petition. In this case, the trial judge found Carter not hable and dismissed it from Star’s suit based on the allegations in Star’s petition.
The Representative Agreements were executed annually. When the accident occurred in October of 1993, the indemnity provision was provided in a supplement. There was no general statement excluding Garter’s individual negligence. Rather, certain acts by the representative were listed. In 1994, when suit was filed, the general statement excluding the individual negligence of Carter was included. We find that the latter contract applies because the duty only arises when a claim or demand is made on Carter.
The Representative Agreement, dated January 1, 1994, Section XI on indemnity provides:
XI. INDEMNITY
Subject to the limitations set forth in the immediately succeeding paragraph of this Section XI. Fisher agrees that it shall at its own expense, protect, defend, indemnify and hold harmless Representative from and against any and all *720 claims, demands, actions, losses, damages, liabilities, costs and expenses (collectively “Losses”) which may arise out of or be made in connection with the death or injury of any person, or damage to property, by whomsoever suffered, resulting a claimed to result from any actual or alleged defect in any Product. The obligations set forth in the immediately preceding sentence shall not apply unless Representative upon receiving notice thereof, promptly notifies Fisher in writing thereof such claim, demand or action and thereafter reasonably cooperates with Fisher in the resolution thereof.
Notwithstanding the provisions of the immediately preceding paragraph of this Section XI or any other provision of this Agreement, Fisher shall not be obligated to protect, defend, indemnify or hold harmless Representative from and against any Losses arising from the following:
|fiF. negligent acts or omissions by Representative.
Pursuant to the" Representative Agreement, Carter notified Fisher in writing in 1994 of the suit against it and requested a defense and indemnification. On September 29, 1994, Fisher responded with a letter asserting the defense was based on:
The letter further states that Fisher will control the defense, settlement or compromise of the litigation and choose the law firm to represent Carter. Fisher reserved the right to withdraw its defense and indemnification obligations upon notice to Carter “if at any time it is determined by Fisher that Fisher’s understanding of the basis for the Litigation is in error or the facts are not as represented by Carter or that pursuant to the terms of the Representative Agreement... .Carter is not entitled to defense or indemnification.... ” Carter signed the letter under the heading “APPROVED AND ACCEPTED” on November 11,1994.
Carter acknowledges that, in insurance cases, the duty to defend is always determined by the facts pled in the petition. Further, it does not dispute that indemnification is not owed for its own independent negligence. However, it cites cases for the proposition that, when the indemnitee is sued for its own negligence, the question of whether the indemnitor owes a duty to defend and provide indemnification is determined by the outcome of the suit against the indemnitee, not by the allegations in a plaintiffs pleadings. Carter cites Phillips v. Equitable Life Assur. Co. of the U.S., 413 So.2d 696 (La.App. 4th Cir.1982);7 Kerr v. Smith Petroleum, 896 F.Supp. 608 (E.D.La.1995); Yocum v. City of Minden, 26-424 (La.App. 2nd Cir.1/25/95), 649 So.2d 129; and Mossy Motors v. Sewerage and Water Bd. of City of New Orleans, 1998-0495 (La.App. 4th Cir.5/12/99), 753 So.2d 269[2].
*721 Phillips, involved a negligence action arising out of the fatal shooting in a parking lot of a Winn-Dixie food store in a shopping center owned by Equitable. Equitable and Winn-Dixie filed third-Party demands against one another seeking indemnification and/or contribution should they be found liable. Winn-Dixie claimed that it was entitled to indemnification based upon the lease agreement which stated:
Landlord shall indemnify and save Tenant harmless from any claims or loss by reason of an accident or damage to any person or property happening on or about the streets, driveways, sidewalks and parking area of Squares 618 and 619
Equitable refused to defend Winn-Dixie on the basis that it was not required by the lease to indemnify Winn-Dixie from its own negligence. Winn-Dixie settled the case prior to trial for $15,000. After the jury found neither Equitable nor Winn-Dixie negligent, the trial judge held that, under the lease provision for indemnity, Winn-Dixie was entitled to be indemnified for the amount of the settlement, interest, attorney’s fees and costs.
In Yocum, the plaintiff was injured on a Sewerage and Water Board construction site. He sued the engineering firm hired by the city. The engineering firm filed a third-party against the contractor. The indemnity ^agreement between the contractor and engineering firm provided that the contractor would indemnify the engineering firm for any claims, etc., arising from the contractor’s negligence in whole or in part, regardless of whether the in-demnitee (engineering firm) was also partly negligent. That case is distinguishable from our case because the language of the contracts is different.
The plaintiff in Kerr was an oil platform worker. He sued the Grasso Production Management, Inc. (Grasso) and/or Smith Petroleum Company (Smith) for injuries he sustained on the platform. It was subsequently determined that the defendants were the employers of plaintiff and his tort claims were dismissed. Pending at the time were cross-motions for summary judgment filed by the defendants on various indemnity and insurance issues. Pertinent to this case, Grasso and Smith had an indemnity agreement, which stated that
[Grassojagreed to protect, defend, indemnify, and hold [Smith] harmless from and against all claims, demands and causes of action of any and every type and character, to the cause or causes thereof which are related in any way to performance by [Grasso, ...], excepting, however, all claims, demands and causes of action resulting from the sole negligence or willful acts or omissions of [Smith Petroleum, ...].
Id. at 610
Although the court discussed the Texas and Louisiana Oilfield Indemnity Acts, the court awarded indemnification based on the parties’ contract and on Smith being immune from tort liability. The allegations of the petition were not the consideration for whether indemnity was owed.
*722 In Mossy, the court found that an indemnity provision in a contract with the Sewerage and Water Board was invalid based on Louisiana statutes that prohibited such agreements. The question of the duty to defend was not an issue there.
Other cases have found that the issue of duty to defend is determined by the facts alleged in the petition. See: Pearson v. Hartford Accident & Indemnity Company, 345 So.2d 123 (La.App. 1st Cir.1977); writ refused 347 So.2d 255 (La.1977),3 writ refused 347 So.2d 256 (La.1977)[3]; and Foster v. Subsea International, Inc., 101 F.Supp.2d 454, 458 (E.D.La.1998).
In Pearson, H.E. Wiese, Inc. (Wiese), a maintenance millwright had a contract with the Shell Chemical Company (Shell) under which Wiese performed routine maintenance work at Shell’s Geismar plant. The plaintiff was employed by Weiss when he was injured. The plaintiff filed suit against Shell and Jim Champine (Champine), a deceased employee of Shell, and Champine’s insurer, The Travelers Insurance Company (Travelers). The plaintiff dismissed his suit against Shell on his own motion. Travelers filed a third party petition against Wiese alleging that under the terms of the maintenance contract, Wiese had a duty to defend Shell and its employees in tort suits arising under the agreement, and that Wiese owed it for the cost and expense of defending the tort action. Wiese responded that it did not owe indemnity or a duty to defend because, under the terms of the contract, there was no duty when the negligence of a Shell employee was alleged to be the sole cause of the injury. The court held that under the terms of the contract, even though Shell was ultimately found not negligent, Weiss did not owe indemnity, because the suit was based solely on the negligence of defendant company or its employees. The court looked to the facts alleged in the petition, not the outcome of the case.
In Foster, the court interpreted Louisiana law that the outcome of the case is not relevant in determining the indemnitor’s duty to defend the indemnitee. Although that case did not involve a provision excluding the indemnitee’s own negligence, a legal exclusion was urged. The indemnitor contended that the plaintiff was a longshoreman and indemnity agreements relative to longshoremen are void under the Longshore and Harbor Workers Act. However, the plaintiff’s petition alleged facts asserting Jones Act seaman status, which had not yet been determined. The court held that the duty to defend was owed based on the petition, |1flbecause “the ultimate outcome of the case has no effect upon the indemnitor’s duty to defend.” Id. at 458.
The jurisprudence relative to ordinary contracts of indemnity and the duty to defend and indemnify are inconsistent or distinguishable. Therefore, we look solely to the contract to determine whether the duty was owed.
The interpretation of a contract is the determination of the common intent of the parties. La. C.C. art.2045. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. C.C. art.2050. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. La. C.C. art.2046. Chevron Phillips Chemical Co., LP v. Sulzer Chemtech USA Inc., 02- *723 598, p. 3 (La.App. 5th Cir.10/29/02), 881 So.2d 474, 476. Conversely, when the words of a contract are ambiguous or lead to absurd consequences, a court attempting to interpret the contract must try to ascertain the common intent of the parties in other ways. Gottsegen v. Hart Property Management Inc., 02-129, p. 5 (La.App. 5th Cir.5/29/02), 820 So.2d 1138, 1140-1141. Doubtful provisions must be interpreted in light of the nature of the contract, equity, usage and the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties. La. C.C. art.2053. However, La. C.C. art.2055 provides that “[e]quity, as intended in the preceding articles, is based on the principles that no one is allowed to take unfair advantage of another and that no one is allowed to enrich himself unjustly at the expense of another.”
The applicable Representative Agreement states that Fisher will indemnify Carter from “all claims, demands, actions, losses ...,” resulting or “claimed to result” from an alleged defect in Fisher’s products. However, it “shall not be lnobligated to protect, defend, indemnify or hold harmless” Carter “from and against any Losses arising from ... F. negligent acts or omissions by Representative.”
The exclusionary provision in the Representative Agreement does not state that it will not defend Carter from “claims” of negligent acts or omissions. It says that it will not be responsible for losses Carter sustains from its negligent acts or omissions. Words in a contract have meaning. In the prior paragraph, the words “claims, demands, and actions” are used specifically. They are conspicuously absent in the exclusion. Furthermore, the letter agreement is not pertinent to this determination because it was specific to a particular event. The letter agreement setting out the terms of the defense of Carter was confected in response to Carter’s demand for defense and indemnity relative to the original lawsuit. The letter specifically refers to the case number of the litigation that is at issue and the date that Carter was served. Based on the Representative Agreement, we find that the parties intended to provide indemnity for Carter in the event that it was individually sued and found not negligent. Thus, the trial judge erred in denying Carter’s motion for summary judgment and dismissing its cross-claim and granting the motion for summary judgment filed by National Union and Fisher.
Accordingly, the judgment is reversed. Summary judgment is granted to Carter. Summary Judgment is denied to National Union and Fisher. The case is remanded to the trial court for a hearing to determine attorney’s fees and costs owed to Carter. Cost of appeal are to be paid by Fisher.
SUMMARY JUDGMENTS REVERSED; SUMMARY JUDGMENT FILED BY CARTER GRANTED; SUMMARY JUDGMENT FILED BY FISHER DENIED. REMANDED.

. Star amended the original petition eight times.

. Insurance law is sui generis and not applicable to these cases. In an insurance policy indemnity case, the petition determines the insurer's duty to defend. In Meloy v. Conoco, Inc., 504 So.2d 833, 839 (La.1987), answer to certified question conformed to, 817 F.2d 275, 1988 A.M.C. 1214 (5th Cir.1987), the Supreme Court explained:
“our understanding that the basis for the Litigation is the allegation that Fisher improperly repaired a valve for the plaintiff, and based on your representations that Carter’s only relationship to the Litigation arises through the contracting with Star Enterprise for the repair of a Fisher DBA valve in February, 1992 which repair was subcontracted in its entirety to Fisher, Fisher is prepared to provide for Carter’s defense and indemnity ... subject to the following conditions ...” *721 An indemnity agreement is a specialized form of contract which is distinguishable from a liability insurance policy. A cause of action under a liability insurance policy accrues when the liability attaches. However, an insurer's duty to defend arises whenever the pleadings against the insured disclose a possibility of liability under the policy. On the other hand, an indemnity agreement does not render the indemnitor liable until the indemnitee actually makes payment or sustains loss. Therefore, a cause of action for indemnification for cost of defense does not arise until the lawsuit is concluded and defense costs are paid [footnote and citations omitted].
See also: Becnel v. United Gas Pipeline Co., 95-41 (La.App. 5th Cir.4/25/95), 655 So.2d 409.

. Both writs were refused on the basis that the trial courts did not commit legal or factual error.